## Devlin's Estate

*James A. Cochrane,* for appellant.
*Elgin E. Weest,* for Commonwealth.

VAN RODEN, P. J., June 21, 1946.—This is an appeal from the appraisement and assessment for trans-

fer inheritance tax in the amount of $1,864.25, purporting to represent the clear value of the estate of decedent, and upon which the collateral tax was levied at the rate of 10 percent, amounting to $186.43.

It appears from the record that the Department of Revenue appraised the personal estate of decedent in accordance with the inventory and appraisement filed by appellant, as executrix, in the sum of $3,010. No objection has been made thereto by appellant, since such valuation corresponds with her own. Appellant also filed a statement of debts and deductions in the total amount of $3,374. Therefore, according to her, the estate was insolvent and no tax was due or owing to the Commonwealth. The register of wills, however, refused to allow the credit claim for a "debt to Herman Marshall" in the sum of $2,220, and reduced the reductions accordingly, thereby reaching a clear value of $1,864.25 for the estate, upon which the tax was levied.

The sole question raised by this appeal is the propriety of the action of the register of wills in refusing credit for the Marshall claim. The Commonwealth has filed a motion to dismiss this appeal on the ground that "any questionable deduction must be decided at the time of the audit of the account."

The real question before the court, therefore, is whether the appeal has raised the issue prematurely, in view of the Act of May 27, 1943, P. L. 757, sec. 1, which amended section 2 of the Act of June 20, 1919, P. L. 521 (as previously amended), 72 PS §2302, by providing that the deductions from the gross value of the estate for debts of decedent shall be allowed by the register of wills, and further providing:

"That whenever the allowance of any deduction by the register of wills from the gross value of such estates shall be in dispute, the question of allowance shall be determined by the court having jurisdiction of the accounts of the personal representative of the

decedent in the adjudication made by such court upon any such account, and unless either party shall, by exceptions to the account or to the adjudication thereon duly presented as provided by law, raise its objection to the allowance or disallowance of a deduction for any credit claimed in the account or any award made in the adjudication, as the case may be, the adjudication confirming the account or making the award shall conclusively establish that the deduction should be allowed or disallowed, as the case may be."

Thus, the apparent effect of the amendment of 1943 is to divide the appraisement and assessment procedure into three steps: The Department of Revenue appraises the assets; deductions are allowed by the register of wills; and the department then assesses the transfer inheritance tax. Although the provisions of the amendment above cited outline a procedure for review by the court of the decision of the register of wills with respect to the allowance or disallowance of such deductions, there has been no express repeal of section 13 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended, 72 PS §2327, which provides that:

"Any person not satisfied with any appraisement of the property of a resident decedent may appeal, within sixty days, to the orphans' court, on paying or giving security to pay all costs, together with whatever tax shall be fixed by the court. The appeal shall specify all the objections to said appraisement, and any objections not specified in the appeal shall not be considered by the court. Upon such appeal, the court may determine all questions of valuation and of the liability of the appraised estate for such tax, subject to the right of appeal to the Supreme Court."

Did the legislature intend by the amendment of 1943 to limit by implication the application of section 13 of the Act of 1919 to appeals from the valuation of assets, rate of taxation, and similar matters, and

to provide that questions relating to deductions may be disposed of only at the audit of the account?

It is always a difficult task to fathom the intention of the legislature especially where, as in this case, the same section was amended twice in the same session of the General Assembly, and neither of the amendments refer to the other (see footnote 72 PS §2302).

It may have been that the motivation for the amendment under consideration was a legislative intention to correct the situation in Haid Estate, 347 Pa. 159, (decided May 10, 1943, 13 days prior to the effective date of the amendment). In that case, the estate had been appraised as insolvent. Between the date of appraisement and the audit, a period of six years, the fiduciary compromised two claims which had been allowed as deductions in the tax appraisement. This rendered the estate solvent, with $2,914.12 for distribution, upon which the Commonwealth claimed a tax of two percent, or $58.28. The Supreme Court held that the appraisal had become final at the expiration of the appeal period, and could not subsequently be challenged at the audit in the orphans' court. In dismissing the Commonwealth's claim, the Supreme Court used the following language (p. 161):

"It will suffice to say, that as affects this case, the *appraiser* appointed by the Auditor General appraised the *clear value* of the estate by appraising the assets and deducting allowable debts and administration expenses. If he had been in doubt as to any deduction, he could have suspended such item in whole or part, for determination by the Orphans' Court. If either the Commonwealth or the parties were dissatisfied with the appraisement they could have appealed to the Orphans' Court, but did not. The appraisement of the clear value having been fixed, and unappealed from, it became final. See: Rowell's Est., 315 Pa. 181."

It has been suggested in an article in Fiduciary Review (October, 1945, page 4) that: "The entire situation may be reconciled, however, by treating the Act of 1943 as providing an alternative method of settling questions of deductions. The question may be raised either on appeal from an appraisement, under Haid's Estate, or on audit, under the Act of 1943. Accordingly, the appraisement would not be final in respect of deductions until audit and adjudication, or until disposition of an appeal from the appraisement."

The court has been unable to find any reported decisions on the issue now in question. We have been referred, however, to an unreported opinion by Judge Hourigan of the Orphans' Court of Luzerne County, 1105 of 1929, in which disposition of an appeal involving exceptions filed by the Department of Revenue to credits for deductions allowed by the register of wills was deferred until the audit. Similar action was taken by this court in an opinion dated September 29, 1945, by Judge Chadwick in Messick's Estate, 301 of 1945.

The court feels that there is no necessary implication that section 13 of the Act of 1919 has been repealed with respect to appeals concerning the allowance or disallowance of deductions and, accordingly, the Commonwealth's motion to dismiss the instant appeal is hereby refused and dismissed. However, we further feel that no useful purpose would be served by holding a hearing on the matter prior to the audit, since such procedure might well lead to a multiplicity of hearings. It is apparent that where a claim is disputed, conflicting issues arise between claimant and the estate on one hand, and the estate and the Commonwealth on the other. All such issues could well be disposed of in one hearing, at the time of the audit, when hearings of disputed claims are normally held.